**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katherine B Perini, | No. CV-20-02427-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Katherine Perini's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Perini filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 16, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 20, "Def. Br.") and Perini filed a Reply Brief (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and affirms the Administrative Law Judge's ("ALJ") decision (R. at 18) as upheld by the Appeals Council (R. at 1).

**I.  BACKGROUND**

Perini filed an Application for Disability Insurance Benefits on November 7, 2017, for a period of disability beginning on December 8, 2016. (R. at 191.) Her claim was denied initially on June 19, 2018, and again upon reconsideration on March 12, 2019. (R. at 107, 114.) Perini returned to full-time work on November 11, 2019. (R. at 19.) She appeared before an ALJ for a hearing regarding her claim on May 11, 2020, which the ALJ denied

on July 15, 2020. (R. at 34, 18.) On October 19, 2020, the Appeals Council denied Perini's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1.)

The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Perini's disability based on the following severe impairments: status post-amputation of the right great toe and degenerative disc disease of the cervical spine. (R. at 20.) The ALJ evaluated the medical evidence and testimony and concluded that Perini was not disabled from the alleged disability onset date through the date of the decision. (R. at 27.) The ALJ found that Perini "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 21.) The ALJ then made the following determination with respect to Perini's residual functional capacity ("RFC"):

> [Perini] has the [RFC] to perform light work as defined in 20 CFR § 404.1567(b) with certain limitations. Specifically, she can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but can only occasionally climb ladders, ropes, or scaffolds. Additionally, she can have frequent exposure to workplace hazards such as moving machinery and unprotected heights.

(R. 22.) Based on Perini's RFC, the ALJ found that Perini was able to perform the same type of work she had performed prior to December 8, 2016 (R. at 27.) Accordingly, the ALJ determined that Perini was not disabled during the relevant period.[1] (R. at 27.)

**II.   LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a

---

[1] The relevant period of alleged disability is December 8, 2016 through November 10, 2019. (Pl. Br. at 2.)

reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. If so, the ALJ continues to step three. There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant can perform such work, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id.*

**III.   DISCUSSION**

Perini raises two issues for the Court's consideration. First, Perini argues that the

ALJ erred in rejecting her symptom testimony "in the absence of specific, clear, and convincing reasons supported by substantial evidence in [the] record as a whole." (Pl. Br. at 1; Reply at 3, 6.) Second, Perini asserts that the ALJ erred in "finding [her] carpal tunnel syndrome was not a severe impairment." (Pl. Br. at 2; Reply at 10.) The Court will address each argument in turn.

### A. Perini's Symptom Testimony

To evaluate a claimant's testimony regarding pain and symptoms, an ALJ performs a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant has presented such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is an exacting standard, under which the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

In doing so, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may consider, for instance, "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Indeed, "[e]ven where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or suggest that the claimant's "later claims about the severity of [the] limitations were exaggerated." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

In addition, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ may consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ determined that Perini's "severe impairments may reasonably have caused the presence of her alleged symptoms" (R. at 23), but concluded that "the evidence generally does not support her allegations regarding the severity, frequency, and intensity of her symptoms and their alleged effect on her functional abilities." (R. at 23.) In particular, the ALJ determined that Perini's symptom testimony was inconsistent with the objective medical evidence in the record and Perini's treatment history. (R. at 26.)

The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)). Thus, because the ALJ determined that Perini's impairments could reasonably have caused her alleged symptoms, the ALJ's decision to discredit Perini's testimony as to the intensity and severity of those symptoms must be supported by "specific, clear and convincing reasons." *See Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). This requirement must be fulfilled as to each discounted symptom, rather than the symptoms collectively. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions").

Although Perini disagrees with the ALJ's decision to reject her symptom testimony, the ALJ provided adequately specific, clear, and convincing reasons for doing so. The ALJ reasonably determined that, for each symptom, Perini's medical records and treatment

history contradicted her subjective testimony regarding the symptom's severity, frequency, and intensity.

Perini first testified that, as a result of the loss of her right great toe, she experienced "throbbing and sharp pain in her right foot, loss of sensation in the four remaining toes of her right foot, and pain, numbness, and swelling in her right leg up to her knee." (R. at 23.) The ALJ identified several contradictory facts in the record. First, Perini's providers noted in March 2017 that the wound left from the amputation of her right great toe—which occurred only four months earlier—was completely healed and that Perini was "doing well." (R. at 23.) Second, in June 2018, Perini reported to her physician that, though the area of her amputation "[was] still painful and [felt] somewhat swollen," it "[had] healed reasonably well." (R. at 23.) Third, Perini only took pain medication for one week following the amputation. (R. at 23.) Fourth, upon physical examination, Perini "exhibited full strength, range of motion, and sensation in the bilateral upper and lower extremities, along with a normal gait, normal station, and the ability to walk on toes and heels, stoop, and squat without difficulty." (R. at 23). This collection of contradictory evidence constitutes sufficiently specific, clear, and convincing reasons for the ALJ's decision to reject Perini's symptom testimony. *Medina v. Comm'r of Soc. Sec. Admin.*, No. CV-16-00462-PHX-JJT, 2017 WL 4216252, at *3–4 (D. Ariz. Sept. 22, 2017) (holding that the ALJ provided "specific, clear, and convincing reasons for rejecting the claimant's [symptom] testimony" when the ALJ pointed to inconsistencies between the claimant's symptom testimony and her treatment history, ability to perform daily activities, and medical record). The ALJ's decision to discredit that aspect of Perini's testimony was therefore reasonable and supported by substantial evidence.

Second, Perini claimed that "her degenerative spinal impairment causes nerve damage in her spine, radicular pain in her back, neck, and shoulder, and numbness in her arms." (R. at 23.) Again, the ALJ concluded that Perini's testimony was contradicted by the record. (R. at 23.) The ALJ provided four key reasons for rejecting Perini's testimony.[2]

---

[2] The ALJ also relied upon Perini's 2017 and 2018 MRI scans. The MRI scans revealed degenerative changes in Perini's cervical spine at the C5-C6 and C6-C7 vertebral levels.

First, Perini informed her providers that she was "attempting to find doctors who [would] support her allegations regarding disability and unemployment." (R. at 24.) As the SSA Commissioner observes, "[s]uch evidence manifests a strong motivation for secondary gain for which the ALJ could reasonably consider in evaluating the reliability of [Perini's] subjective complaints." (Def. Br. at 5.) Despite Perini's assertions to the contrary, such "doctor-shopping" is not merely "doing exactly what agency regulations require: *Your responsibility*." (Reply at 9 (quotations omitted).) *See Hart v. Astrue*, 349 F. App'x 175, 177 (9th Cir. 2009) (determining that the ALJ reasonably considered evidence of the claimant's "doctor-shopping" when rejecting the claimant's symptom testimony).

Second, the ALJ found persuasive a June 19, 2018, disability determination conducted by Dr. Ernest Griffin. (R. at 25.) Dr. Griffin found that Perini could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (R. at 77.) Dr. Griffin further determined that Perini could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (R. at 78.) Based on these observations, Dr. Griffin concluded that Perini was not disabled. (R. at 80.)

Third, the ALJ noted that Perini's symptoms began improving by February of 2019 and that "by April of 2019 she was reporting no new or progressive neurologic symptoms." (R. at 24 (citation omitted).) Further, in examinations conducted during the same period, she "exhibited normal strength and range of motion in the bilateral upper extremities, along with a normal, non-antalgic tandem gait." (R. at 24.)

Fourth, the ALJ found persuasive a March 12, 2019, disability determination conducted by Dr. Mikhail Bargan. (R. at 100.) Dr. Bargan concurred with Dr. Griffin in all material respects. Dr. Bargan, like Dr. Griffin, found that Perini could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (R. at 98–99.) Dr. Bargan

---

This medical evidence reinforces, rather than discredits, Perini's symptom testimony. In fact, the MRI scans contain no information which supports the ALJ's decision to reject Perini's symptom testimony. Still, the ALJ's four additional reasons were sufficient, and his decision ultimately was supported by substantial evidence.

also found that Perini could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (R. at 99.) Given these findings, Dr. Bargan agreed with Dr. Griffin that Perini was not disabled. (R. at 101.)

These four reasons for rejecting Perini's symptom testimony regarding her degenerative spinal impairment were sufficiently specific, clear, and convincing. The ALJ's decision was reasonable and supported by substantial evidence.

### B.     Carpel Tunnel Syndrome as a Non-Severe Impairment

To prove a severe impairment, a claimant must simply demonstrate that "there is more than a minimal effect on [her] ability to do basic work activities." *Jimenez v. Astrue*, 641 F. Supp. 2d 954, 960 (C.D. Cal. 2009). Put another way, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities include:

> Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b); *see also Jimenez*, 641 F. Supp. 2d at 960. The bar for establishing a severe impairment is low and has been described as "a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

Perini alleges that her carpel tunnel syndrome was not such a weak claim. (Pl. Br. at 20; Reply at 10.) She provides two reasons why her carpel tunnel syndrome should have been classified as a severe impairment: (1) she required surgical release in June 2019 (Pl. Br. at 20; Reply at 10); and (2) she testified that her carpal tunnel syndrome kept her from using her hands effectively (Pl. Br. at 20). The ALJ considered this evidence and found it insufficient to demonstrate that Perini's carpal tunnel syndrome had more than a minimal effect on her ability to perform basic work activities. (R. at 20.)

The ALJ, in determining that the impairment was not severe, noted three things.

First, when Perini's carpal tunnel syndrome was diagnosed in October 2018, her provider characterized the condition as "not severe." (R. at 20.) Second, Perini's symptoms were "mild in degree[,] intermittent in duration, [and] well controlled with treatment." (R. at 20.) Third, a February 28, 2017, examination revealed that Perini had "no limitation in sensation, reflexes, or strength in her upper extremities."[3] (R. at 20.)

The ALJ's conclusion that Perini's carpal tunnel syndrome did not constitute a severe impairment was supported by substantial evidence. Though the evidence could have led to the opposite conclusion, this Court cannot upset the ALJ's decision where, as here, "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision." *Thomas*, 278 F.3d at 954.

**IV.   CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** affirming the July 15, 2020 decision of the Administrative Law Judge (R. at 18), as upheld by the Appeals Council on October 19, 2020. (R. at 1.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 11th day of March, 2022.

Michael T. Liburdi
United States District Judge

---

[3] The ALJ misread the record on this point. For the February 28, 2017, examination, the examiner actually noted no limitation in sensation, reflexes, or strength in the *lower* extremities. (R. at 398.) This error was harmless, however, because the ALJ still reasonably concluded that Perini did not meet her burden of demonstrating that her carpal tunnel syndrome had more than a minimal impact on her ability to perform basic work activities and because the same examination *did* indicate that Perini possessed full "bilateral upper extremity strength." (R. at 398.)